Andrea Weiss Jeffries (SBN: 183408)
andrea.jeffries@wilmerhale.com
Wilmer Cutler Pickering Hale and Dorr LLP
350 South Grand Avenue, Suite 2100
Los Angeles, CA 90071
Telephone: +1 213 443 5300
Facsimile: +1 213 443 5400

*Attorney for Intervenor-Defendant*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| County of Santa Barbara,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Kevin Haugrud, et al.,<br><br>　　　　　Defendant. | Case No. 17-cv-703 SVW-AFM<br><br>**MEMORANDUM IN SUPPORT OF THE SANTA YNEZ BAND OF MISSION INDIANS' UNOPPOSED[1] MOTION FOR INTERVENTION**<br><br>Judge: Hon. Stephen V. Wilson<br>Courtroom: 10A<br>Date: March 20, 2017<br>Time: 1:30 p.m. |

---

[1] As set forth in the Declaration of Andrea Jeffries filed concurrently herewith, the County of Santa Barbara does not oppose this motion. The United States does not oppose permissive intervention but does not support intervention as of right.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION ................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 2

ARGUMENT ........................................................................................................... 5

    I.    Intervention Should Be Granted As of Right ........................................ 6

        A.    This Motion to Intervene Is Timely ............................................ 6

        B.    The Tribe Has an Interest Relating to the Property or Transaction Which Is the Subject of This Action. ..................... 7

        C.    An Adverse Decision Would Impair the Tribe's Ability to Protect its Interests. ............................................................... 9

        D.    The United States May Not Adequately Protect the Tribe's Interests in This Suit. ..................................................... 10

    II.    The Tribe Also Qualifies for Permissive Intervention. ...................... 11

CONCLUSION ...................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Butte County v. Hogen,* 609 F. Supp. 2d 20 (D.D.C. 2009) ....................................... 1

*California v. Tahoe Regional Planning Agency*, 792 F.2d 775 (9th Cir. 1986) ................................................................................................................ 10

*City of Roseville v. Norton*, 219 F. Supp. 2d 130 (D.D.C. 2002) .............................. 2

*City of Sault Ste. Marie v. Andrus*, 532 F. Supp. 157 (D.D.C. 1980) ....................... 2

*Dimond v. District of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) ............................ 10

*Florida Department of Business Regulation v. U.S. Department of Interior*, 768 F.2d 1248 (11th Cir. 1985) ......................................................... 1

*Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489 (9th Cir. 1995) ............................................................................................. 6, 7, 10

*Freedom from Religion Foundation, Inc. v. Geithner*, 644 F.3d 836 (9th Cir. 2011) ................................................................................................... 11

*Kleissler v. U.S. Forest Service*, 157 F.3d 964 (3d Cir. 1998) ...................... 8, 10, 11

*League of United Latin American Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) ..................................................................................................... 6

*Littlefield v. U.S. Deparment of Interior*, CV No. 16-10184-WGY, 2016 WL 5346940 (D. Mass. Sept. 23, 2016) ................................................. 8

*Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776 (D.C. Cir. 1997) ......................................................................... 12

*McClendon v. United States*, 885 F.2d 627 (9th Cir. 1989) ...................................... 1

*Me-Wuk Indian Community of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315 (D.D.C. 2007) ....................................................................... 8

*Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir. 1993) ................................................................................................................ 11

*Natural Resources Defense Council v. Norton*, No. 1:05cv01207 OWW TAG, 2006 WL 39094 (E.D. Cal. Jan. 5, 2006) .................................. 7

*Northwest Forest Resource Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996) .................................................................................................... 7

*Patchak v. Salazar,* 646 F. Supp. 2d 72 (D.D.C. 2009), *rev'd*, 632 F.3d 702 (D.C. Cir. 2011), *aff'd sub nom. Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199 (2012) ........................................................................................... 1

*Sanguine, Ltd. v. U.S. Department of Interior*, 736 F.2d 1416 (10th Cir. 1984) .................................................................................................... 7

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ...................................... 11

*Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) .................................................................................................... 6

*United States v. Pitney Bowes, Inc.*, 25 F.3d 66 (2d Cir. 1994) .............................. 12

**STATUTES, RULES, AND REGULATIONS**

25 C.F.R. § 151.10 ................................................................................. 3

25 U.S.C. § 465 ...................................................................................... 1

25 U.S.C. § 5108 ................................................................................ 1, 2

42 U.S.C. §§ 4321–4347 ........................................................................ 3

81 Fed. Reg. 5019 (2016) ....................................................................... 2

Fed. R. Civ. P. 24 ............................................................................. 9, 12

**OTHER AUTHORITIES**

7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d. ed. 2016) ................................................................................ 10

7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1913 (3d. ed. 1998) ................................................................................ 12

Padraic I. McCoy, *The Land Must Hold the People: Native Modes of Territoriality and Contemporary Tribal Justifications for Placing Land Into Trust Through 25 C.F.R. Part 151*, 27 Am. Indian L. Rev. 421 (2003) ............................................................................. 8

# INTRODUCTION

In this lawsuit, the County of Santa Barbara (the "County" or "Plaintiff") seeks to challenge the decision of the Department of the Interior to take 1,400 acres of land in the Santa Ynez Valley ("Camp 4" or the "Property") into trust for the Santa Ynez Band of Mission Indians ("Chumash" or the "Tribe") under 25 U.S.C. § 5108 (formerly 25 U.S.C. § 465). The County seeks to have the Property removed from trust. This case is thus of extraordinary importance to the Tribe. Because the Property is held in trust, the Tribe, as a sovereign, exercises governmental authority over the Property, on which the Tribe plans to build much-needed housing and other infrastructure that will allow it to deliver necessary services to its members. Removing the land from trust would violate the Tribe's sovereignty and frustrate those goals.

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the Tribe respectfully moves to intervene as a defendant—as of right or, in the alternative, permissively—to promote its substantial interest in exercising sovereign authority over the 1,400-acre parcel at issue.[2] The County does not oppose the Tribe's intervention, and the United States consents to the Tribe's intervention under Rule 24(b)(2). Declaration of Andrea Jeffries ("Jeffries Decl.") ¶ 6. Indeed, Courts routinely allow Indian tribes to intervene in suits challenging the federal government's decision to accept a parcel of land into trust under 25 U.S.C. § 465. *See, e.g., Patchak v. Salazar,* 646 F. Supp. 2d 72, 74 (D.D.C. 2009), *rev'd*, 632 F.3d 702 (D.C. Cir. 2011), *aff'd sub nom. Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199 (2012); *Butte County v. Hogen,* 609 F. Supp. 2d 20, 22 (D.D.C. 2009); *Florida Dep't of Bus. Regulation v. United*

---

[2] The Tribe intervenes in this action only as to "the issues necessary to decide the action" and does not otherwise waive its sovereign immunity from suit. *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir. 1989) ("a tribe's waiver of sovereign immunity may be limited to the issues necessary to decide the action brought by the tribe; the waiver is not necessarily broad enough to encompass related matters, even if those matters arise from the same set of underlying facts").

*States Dep't of Interior*, 768 F.2d 1248, 1250 (11th Cir. 1985); *City of Roseville v. Norton*, 219 F. Supp. 2d 130, 137 (D.D.C. 2002); *City of Sault Ste. Marie, Michigan v. Andrus*, 532 F. Supp. 157, 159-60 (D.D.C. 1980). This Court should do likewise for the reasons discussed below.

## STATEMENT OF FACTS

The Indian Reorganization Act ("IRA") authorizes the Secretary of the Interior to acquire any interest in lands "for the purpose of providing land for Indians." 25 U.S.C. § 5108. Under that provision, land "shall be taken in the name of the United States in trust for the Indian tribe or individual Indian for which the land is acquired, and such lands or rights shall be exempt from State and local taxation" and subject to the tribe's sovereign authority. *Id*.

The Santa Ynez Band of Mission Indians was federally recognized in 1901, and is on the official list of federally recognized Indian tribes as the Santa Ynez Band of Chumash Mission Indians of the Santa Ynez Reservation. 81 Fed. Reg. 5019, 5022 (2016). It is the only federally recognized Chumash tribe in the nation. The Chumash Indians once numbered in the tens of thousands and lived along the coast of California; their territory encompassed 7,000 square miles reaching from the beaches of Malibu to Paso Robles (including the four Northern Channel Islands). The Chumash also lived inland to the western edge of the San Joaquin Valley. Today, the Tribe has only 136 members, and before the trust acquisition of Camp 4, the Tribe's reservation was only 138.95 acres. Development of any new tribal housing was not feasible on the undeveloped land in that tiny area.

The trust acquisition of Camp 4 has been subject to considerable scrutiny over the past four years, and the issues have been well-aired before the appropriate administrative bodies. In March 2013, the Tribe submitted a Tribal Consolidation and Acquisition Plan ("TCA") to the Department of the Interior (the "Department"). The TCA was a planning document that requested that the Secretary of the Interior acknowledge the historical connection of the Tribe to

approximately 11,000 acres, including Camp 4. The TCA is listed in 25 C.F.R 151.3(a) as land that may be acquired for a tribe in trust status: (1) when the property is located within the exterior boundaries of the tribe's reservation or adjacent thereto, or within a tribal consolidation area; (2) when the tribe already owns an interest in the land; or (3) when the Secretary determines that the acquisition of the land is necessary to facilitate tribal self-determination, economic development, or Indian housing.

The TCA was approved by the Director of the Pacific Regional Office, Bureau of Indian Affairs ("Regional Director") in June 2013. Plaintiff and several other parties filed an appeal of the decision. In October 2013, the Tribe withdrew the TCA application, and all appeals were dismissed as moot.

In the meantime, in July 2013, the Tribe submitted a *separate* application requesting that the Department take Camp 4 into trust for the Tribe (the "Application"). Because a discretionary decision to take land into trust under the IRA can implicate the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321–4347, an Environmental Assessment ("EA") was prepared for the project. *See* 25 C.F.R. § 151.10(h). In August 2013, the BIA released an EA for the fee-to-trust application for public review and comment.

In November 2013, the Tribe amended the Application ("Amended Application"). The Amended Application explained that taking Camp 4 into trust would:

1. Provide ample land space to provide for tribal housing for all tribal members and their families.

2. Bring land within the jurisdictional control of the Tribe, meeting the need for consistent planning, regulatory, and development practices under the single jurisdiction of the Tribe.

3. Help meet the Tribal long range needs to establish a greater reservation land base to meet its needs by increasing the reservation by approximately 1400 acres.

> 4. Help meet the need for a land base for future generations, land-banking, etc.
>
> 5. Help to increase Tribe's ability to exercise self-determination and to expand Tribal government.
>
> 6. Help meet the need to preserve cultural resources in the area by returning land to Tribal and DOI control in order to protect Tribal land from dumping, environmental hazard, unauthorized trespass, or jurisdictional conflict.

Jeffries Decl. Ex. A, Amended Application at 8-9. The Amended Application also described the Tribe's intent to use the property to develop tribal housing and related infrastructure for tribal members and lineal descendants. *See id*. at 15. The Amended Application made no reference to the TCA, and the TCA was not at issue in the evaluation of the Amended Application.

The Amended Application was subject to appropriate notice and comment. Accordingly, on November 19, 2013, the Bureau of Indian Affairs ("BIA") issued a Notice of (Non-Gaming) Land Acquisition Application for the Amended Application. The County submitted a response in opposition to the Amended Application on December 17, 2013. The BIA prepared and released a Final EA for the Amended Application in May 2014, and the County timely submitted comments on the Final EA on July 11, 2014.

After a careful review of the Final EA, on October 17, 2014, the Regional Director issued a Finding of No Significant Impact ("FONSI") for the Amended Application. On December 24, 2014, the Regional Director issued a Notice of Decision ("NOD") to take the land into trust for the Tribe. In making its decision, the BIA considered eight factors, including the Tribe's need for additional land, the purposes for which the land would be used, and the impact on the State and its political subdivisions resulting from the removal of the land from the tax rolls. *See* Jeffries Decl. Ex. B, NOD at 19. In addition, the BIA specifically addressed compliance with NEPA, and concluded that the Amended Application was "not a

major Federal action significantly affecting the quality of human environment, as defined by NEPA. Therefore, preparation of an Environmental Impact Statement (EIS) is not required." *Id*. at 24. The County and other parties appealed to the IBIA, challenging the NOD. The Assistant Secretary-Indian Affairs ("ASIA") assumed jurisdiction over the appeal.

On January 19, 2017, the ASIA issued a decision affirming the NOD. The decision held that the "Regional Director gave sufficient consideration to the regulatory criteria contained in 25 C.F.R. § 151.10, and that the Decision was reasonable and supported by the record." Jeffries Decl. Ex. C, ASIA Decision at 2. The decision also found that the BIA "conducted the appropriate level of review under NEPA." *Id*. Camp 4 was accordingly taken into trust for the Tribe on January 20, 2017. The County then filed this suit challenging the trust determination and seeking to have Camp 4 taken out of trust.

The Tribe now moves for intervention as of right under Federal Rule of Civil Procedure 24(a)(2) to defend the legality of the decision to take Camp 4 into trust. Although the United States will no doubt vigorously defend the legality of its actions, the Tribe has a different and more concrete interest in the dispute here, which will determine whether the Tribe is able to exercise sovereign authority over its land and use the land for the benefit of its members. The Tribe has a right to defend that interest. For similar reasons, in the alternative the Tribe moves for permissive intervention under Federal Rule of Civil Procedure 24(b)(2).

## ARGUMENT

This lawsuit threatens the Tribe's sovereign interests as well as its authority to develop Camp 4 to meet the pressing needs of its members. The County seeks to have Camp 4 taken out of trust. Such a decision would strip the Tribe of its sovereign authority over its land and hinder the Tribe from using the land for much-needed housing and other services. The Tribe readily satisfies the criteria

for intervention as of right under Rule 24(a) and for permissive intervention under Rule 24(b).

## I. Intervention Should Be Granted As of Right.

Rule 24(a)(2) provides that, upon timely application, the court "must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." This rule should in general be construed "liberally in favor of potential intervenors," *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001), because a "liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts," *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1496 n.8 (9th Cir. 1995).

Under Ninth Circuit precedent, a party seeking intervention as of right must satisfy the following factors: (1) the intervention motion must be timely; (2) the applicant must claim an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be situated such that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest must not be adequately represented by existing parties to the action. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir. 1997). Here, the Tribe easily satisfies each of these factors.

### A. This Motion to Intervene Is Timely.

In assessing timeliness, this Court must consider: (1) the current stage of the proceedings; (2) whether the existing parties would be prejudiced; and (3) the reason for any delay in moving to intervene. *Id.* Because the Complaint in this matter was filed only 17 days ago, and no substantive proceedings have yet taken place, this is an appropriate stage of the case at which to intervene. Further, the

existing parties would not be prejudiced: Plaintiff and Defendants are both well aware of the Tribe's intention to intervene, and the Tribe appeared at the February 1, 2017 status conference and indicated to the Court its intention to intervene. Thus the Motion to Intervene is unquestionably timely. *See, e.g., Natural Res. Def. Council v. Norton*, 1:05-cv-01207, 2006 WL 39094, at *7 (E.D. Cal. 2006) (concluding that the intervenor's motion to intervene was timely when the complaint was filed in February and the motion to intervene was filed in March).

### B. The Tribe Has an Interest Relating to the Property or Transaction Which Is the Subject of This Action.

To demonstrate a "significantly protectable interest," a would-be intervenor "must establish that (1) the interest asserted is protectable under some law, and (2) there is a relationship between the legally protected interest and the claims at issue." *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (citation omitted). A prospective intervenor has a sufficient interest when "rights of the applicant may be affected by a proposed remedy." *Forest Conservation Council*, 66 F.3d at 1495. In other words, "when . . . the injunctive relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, that party satisfies the 'interest' test of Fed. R. Civ. P. 24(a)(2)." *Id*. at 1494.

The Tribe easily satisfies these standards. First, the Tribe's undisputed ownership of the land at issue gives it a direct, protectable, and cognizable interest in this dispute. *See, e.g., Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1420 (10th Cir. 1984) (holding that tribe members who owned oil and gas producing lands had sufficient interest to intervene in suit between oil-and-gas lessor and the federal government).

Second, the Tribe is the direct beneficiary of the Department's decision to acquire Camp 4 in trust, and the County attacks the Department's ultimate decision as well as its decision-making process. *See, e.g.,* Compl. ¶¶ 45-59. Indeed, it was

the Tribe's Amended Application that was the subject of the Department's decision. The Tribe thus has a significant interest in defending the propriety and legality of the trust determination. That interest is itself sufficient to support intervention. *See, e.g. Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315, 319 (D.D.C. 2007) (allowing intervention of tribe where decision could have "great weight" on the same or similar issues pending in separate litigation); *see also Littlefield v. U.S. Dep't of Interior*, CV No. 16-10184-WGY, 2016 WL 5346940 *1 (D. Mass. Sept. 23, 2016)) (permitting intervention by tribe in action challenging decision to take land into trust where "[tribe had] undeniable and compelling interest in outcome of … litigation"); *see also Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969-73 (3d Cir. 1998) (holding that local governments and private interests that benefited directly from a Forest Service decision had right to intervene to support decision against a NEPA challenge).

  Third, this lawsuit seeks to overturn the Department's decision to take Camp 4 into trust and have the land removed from trust. That request has far-reaching implications for the Tribe. Tribes need land to provide necessary services to their members and to serve cultural and educational purposes. And tribal lands are necessary to tribes' exercise of self-determination as sovereign entities. *See generally* Padraic I. McCoy, *The Land Must Hold the People: Native Modes of Territoriality and Contemporary Tribal Justifications for Placing Land Into Trust Through 25 C.F.R. Part 151*, 27 Am. Indian L. Rev. 421, 444 (2003).[3]

---

[3] Tribal trust lands are typically the single most important economic resource for an Indian tribe, as they provide the basis for economic development. As with Camp 4, trust land also serves many other key purposes, including providing housing and other basic services to a tribe's members. Moreover, trust status allows a Tribe fully to exercise its sovereign authority over its own lands, enabling the Tribe to determine its own course in addressing the needs of its government and its members. Land that is merely held in fee cannot adequately satisfy these critical needs.

- 8 -
MEMORANDUM IN SUPPORT OF MOTION FOR INTERVENTION
2:17-CV-00703 SVW-AFM

In its Amended Application to take the land into trust, the Tribe described in detail why this land was needed to promote tribal sovereignty and self-sufficiency:

"This trust land acquisition is an integral part of the Tribe's efforts to bring tribal members and lineal descendants back to the Tribe, accommodate future generations, and create a meaningful opportunity for those tribal members and lineal descendants to be a part of a tribal community revitalization effort that rebuilds tribal culture, customs and traditions." Jeffries Decl. Ex. A, Amended Application at 9. The Amended Application delineated six specific benefits of moving the land into trust, laid out in the Tribe's Statement of Facts quoted above, and emphasized the key benefit of being able to provide housing for the Tribe's members. *Id.* at 8-9.

In sum, the Tribe has clear, cognizable, and protected interests in the trust status of its land, which will be directly affected by the Court's resolution of this action.

### C.  An Adverse Decision Would Impair the Tribe's Ability to Protect its Interests.

To intervene as of right under Rule 24(a)(2), the Tribe must be "so situated that disposing of th[is] action may as a practical matter impair or impede [its] ability to protect its interest[s]." Fed. R. Civ. P. 24(a)(2). That condition is easily met here.

The County is seeking to have Camp 4 taken out of trust. *See* Compl. ¶ 5; *see also* Prayer ¶ 1. The very purpose of this suit, then, is to prevent the Tribe from fully exercising sovereign authority over its land and developing the land in the way the Tribe has determined is necessary to meet its members' needs. Taking Camp 4 out of trust will directly harm the Tribe and its members.

Indeed, the Tribe has spent decades fighting to restore its government-to-government relationship with the United States and to regain a small portion of the vast aboriginal lands it has lost. The Tribe has also spent years complying with the

Department of Interior's substantive and procedural requirements to complete this fee-to-trust transfer. Reversal of the trust acquisition will impose additional severe economic and social burdens on the Tribe and its members, who, without Camp 4, have no land suitable for tribal housing and the promotion of cultural activities.

### D. The United States May Not Adequately Protect the Tribe's Interests in This Suit.

Finally, to justify intervention as of right, the Tribe must show that the federal defendants' representation of the Tribe's interests "*may* be inadequate." *Forest Conservation Council*, 66 F.3d at 1498. The Tribe's burden in this respect is "minimal." *Id*. This condition is met, for instance, where existing parties might not advance all of the arguments that the intervenor would advance, *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986); where the intervenor's stake in the litigation differs from that of the existing defendant, *see Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); where the named defendant might not choose to appeal an adverse judgment, *see Kleissler* 157 F.3d at 973; or where "the intervenor would offer any necessary elements to the proceedings that other parties would neglect," *Tahoe Regional*, 792 F.2d at 778. In deciding whether a proposed intervenor is adequately represented, "all reasonable doubts should be resolved in favor of allowing the absentee . . . to intervene so that he may be heard in his own behalf." 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1909 (3d. ed. 2016).

As described above, the Tribe, as the beneficiary of the trust, has a unique interest in the trust status of Camp 4. Although the United States will defend the administrative action below, the Tribe alone, and not the United States, would suffer the full negative consequences of an adverse ruling. Moreover, federal representation of tribal interests is complex and sometimes conflicting. The United States' institutional interest in the interpretation and administration of the Administrative Procedure Act, NEPA, and the IRA is broader than, and at least

potentially divergent from, the Tribe's concrete interest in maintaining the fee-to-trust transfer. *See Kleissler*, 157 F.3d at 973-74 (recognizing that the federal government "represents numerous complex and [potentially] conflicting interests," and the "straightforward" interests of an intervenor might "become lost in the thicket"); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994) (recognizing that "the government must represent the broad public interest, not just the economic concerns of the [proposed intervenor]"); *see also, e.g.*, *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1000-01 (8th Cir. 1993) (holding that, because the county's and landowners' "local and individual interests" were not shared by the general state citizenry, the State would not adequately represent those interests).

## II. The Tribe Also Qualifies for Permissive Intervention.

In the alternative, the Tribe asks that the Court exercise its discretion to allow permissive intervention pursuant to Rule 24(b)(1), which provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." It is commonly stated that "permissive intervention requires (1) an independent ground for jurisdiction; (2) a timely motion; and (3) a common question of law and fact between the movant's claim or defense and the main action." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011) (internal citations omitted). Permissive intervention is certainly appropriate here, and neither the County nor the Department of the Interior opposes the Tribe's intervention pursuant to Rule 24(b).

Because this is a federal question case and because the Tribe is not raising new claims, the Tribe does not need to show an independent ground for jurisdiction. *See id*. at 844. And because the Tribe's interest lies only in the questions of law and fact raised in the "main action," the principal consideration in ruling on a motion to intervene under Rule 24(b) is "whether the intervention will

unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); *see United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 73 (2d Cir. 1994); 7C Charles Alan Wright et al., *Federal Practice and Procedure* § 1913 (3d. ed. 2016). In this case, the Tribe's intervention could cause neither delay nor prejudice. Because the Tribe seeks only to defend the trust decision without injecting new issues into the case, the matters of law and fact that the Tribe will address are already before the Court. Likewise, because the Tribe seeks to intervene at the outset of the case, its intervention will not delay the proceedings. Indeed, the Tribe's interest is to ensure the expeditious resolution of this case and the prompt implementation of the Department's decision to take Camp 4 into trust. Finally, the Tribe's unique position offers the advantage of "increased information (which might reduce the risk of error)." *Massachusetts School of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997).

## CONCLUSION

The motion to intervene should be granted.

Respectfully submitted,

Dated: February 14, 2017

/s/ Andrea Weiss Jeffries
Andrea Weiss Jeffries
WILMER CUTLER PICKERING HALE AND DORR, LLP
350 S. Grand Ave. Suite 2100
Los Angeles, CA 90071
(213) 443-5300
(213) 443-5400 (facsimile)